**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**BETTY SUE MITCHELL**                                                             **PLANTIFF**

**V.**                                      **CIVIL ACTION NO. 2:20CV04 TBM-LGI**

**ANDREW SAUL,
COMMISSIONER OF SOCIAL SECURITY**                           **DEFENDANT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Betty Mitchell appeals the Commissioner of Social Security's final decision denying her applications for benefits. The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

On April 10, 2017, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits after suffering an on-the-job injury to her left shoulder on April 3, 2017. Plaintiff alleged a disability onset date of April 3, 2017, due to a left shoulder injury, high blood pressure, diabetes, anxiety, and back and neck pain. She was 55 years old on her alleged onset date with a seventh-grade education and past relevant work experience as a caregiver in a nursing home. Following agency denials of her applications, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the

meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

## Factual Background

The relevant medical evidence is detailed in the memorandum briefs and the ALJ's decision and will not repeated in-depth here. At the administrative hearing in this case, Plaintiff testified that she injured her left arm when she attempted to lift a patient at the nursing facility where she worked. She initially received workers compensation, but the benefits had stopped by the time of the administrative hearing. Though released to return to work in November 2018, Plaintiff testified that she has not tried to return to work because of severe arm pain, which she rates as an 8 on a scale of 1-10. Neither physical therapy nor arthroscopic surgery has helped. In addition to the arm pain, she suffers from pain in her back, right leg, and right arm, all with no relief from medication. As a result, she cannot lift over 10 pounds, stand more than five minutes, walk long distances, perform household chores, or dress herself without assistance from her grandchildren.

After considering Plaintiff's testimony and subjective complaints, the ALJ concluded that the objective medical evidence did not establish the loss of functioning to the extent alleged. At step one of the five-step sequential evaluation,[1] the ALJ found that

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that while Plaintiff's "effect of left shoulder arthroscopy and debridement; right shoulder rotator cuff tear; diabetes mellitus type 2; and, hypertension" were severe impairments, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform medium work[2] with the following limitations:

> [S]he can lift 50 pounds occasionally and 25 pounds frequently, but she can only lift 10 pounds maximum with the left upper extremity. She can stand/walk or sit six hours each in an eight-hour workday. She can never climb ladders, ropes and scaffolds. She cannot reach overhead with the left upper extremity, but she can occasionally reach in all other directions. She can frequently reach in all directions with the right upper extremity. She can frequently handle, finger and feel. She must avoid concentrated exposure (no more than frequent) to vibrations.

Relying on vocational expert testimony, the ALJ concluded at step five that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a coffee maker and floor waxer.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.'" *Whitehead v.*

---

[2] For social security determination purposes, jobs are classified by physical exertion requirements as sedentary, light, medium, heavy, and very heavy. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567.

*Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted). Evidence is substantial if it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff raises two errors on appeal: (1) the ALJ's residual functional capacity is not supported by substantial evidence, and (2) the ALJ failed to properly consider Plaintiff's subjective complaints and limitations. The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision. Given the evidence in this case, the undersigned submits that the Commissioner's decision should be affirmed.

**1.**

In her first assignment of error, Plaintiff objects to the ALJ's residual capacity determination, specifically the failure to find her primary physician's opinion persuasive.[3]

---

[3] An ALJ's residual functional capacity determination is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001). "An RFC assessment, as opposed to a medical source statement, is an administrative finding of fact." *Bellanger v. Astrue*, No. 11-00634, 2012 WL 4210298, at *12 (E.D. La., Aug. 10, 2012) (citing Social Security Ruling 96–8p, 1996 WL 374184 at *2 n. 4). It is not a medical opinion.

4

Social Security regulations have historically divided medical sources into three general categories: (1) treating sources (primary care physicians); (2) non-treating examining sources (physicians who perform an examination of the claimant); and (3) non-examining reviewing sources (physicians who review only the claimant's medical record). Historically, the opinions of treating physicians have been assigned controlling weight in determining disability, but ALJs have always been free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017); *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015); 40 C.F.R. § 404.1527.

However, the Social Security Administration revised its regulations in 2017 so that ALJs are no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a) (2017). Under the new regulations, supportability and consistency of medical opinions are "the most important factors" to be considered when evaluating the persuasiveness of medical opinions. The ALJ must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in his decision. 20 C.F.R. § 404.1520c(b)(2). However, the ALJ "*may*, but [is] not required to," explain how he considered the following factors: (1) the medical source's relationship with the claimant, including the length of the relationship and the frequency of examination, (2) the medical source's area of specialization, and (3) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."

5

§ 404.1520c(c)(3)-(5). Instead, ALJs must now "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record," considering the same enumerated factors as considered under the prior regulation, as appropriate. § 404.1520c(b).

Applying this new standard here, the ALJ found the medical opinions issued after Plaintiff's shoulder surgery were more persuasive and consistent with the evidence than those issued by her primary treating physicians prior to surgery. Plaintiff objects to the ALJ's finding, but the undersigned finds that it is supported by substantial evidence as set forth below.

Approximately three months after her shoulder injury, Plaintiff's primary treating physician issued an opinion assigning work limitations. Jackie McHenry, M.D. opined that Plaintiff could occasionally stand, walk, and lift 5 pounds, and infrequently sit, stoop, and lift 10 pounds. In his opinion, Plaintiff's rotator cuff injury would not only preclude her from raising her left arm over her shoulder but would cause her to be off task 70% of the workday. She would also need to take frequent unscheduled work breaks and would miss five or more workdays per month.

After completing his medical source statement, however, Dr. McHenry referred Plaintiff to an orthopedic clinic where she was evaluated by Dr. Henry Durgin. On examination, Dr. Durgin noted that Plaintiff exhibited full passive range of motion while her active range of motion was moderately limited, secondary to pain. Dr. Durgin's impressions were rotator cuff strain, rotator cuff tendinopathy with impingement and symptomatic acromioclavicular joint degenerative joint disease. Plaintiff was

6

conservatively treated with medication and physical therapy, but when these non-operative measures proved unsuccessful, Dr. Durgin recommended surgery. Dr. Gandy, a physician with Jackson Orthopedic Clinic issuing an opinion for Plaintiff's worker's compensation claim, agreed. With surgery and physical therapy, Plaintiff could return to her pre-injury work activities.

Plaintiff underwent surgery in March 2018, roughly one year after her shoulder injury. In post-operative visits, she continued to report impairment in her left arm. However, as observed by the ALJ, physical therapists noted that Plaintiff "did not demonstrate impairment in the facility." She was able to put dishes and towels away and lift a ten-pound crate at or above shoulder height, all with her left upper extremity. In November 2018, Dr. Durgin released Plaintiff to work with a permanent 10-pound lifting restriction in the left arm.

In formulating Plaintiff's residual functional capacity, the ALJ found this assessment was persuasive because it "represent[ed] the full extent of the left shoulder limitations after treatment." Though Plaintiff contends the ALJ should have adopted Dr. McHenry's assessment that she be off task 70 % of the workday and miss four to five days a month due to shoulder pain, substantial evidence supports the ALJ's finding. Dr. McHenry's assessment was rendered before Plaintiff's surgery and subsequent physical therapy. While she was not symptom-free, the record does not establish that she experienced post-surgery limitations beyond those assessed in the ALJ's residual functional capacity determination.

7

The record does not establish standing and walking limitations precluding Plaintiff from working within her residual functional capacity. Plaintiff cites the consultative examination conducted by agency examiner, Ruth Gershon, M.D., six weeks after her injury as evidence to the contrary. On examination, Dr. Gershon notes that Plaintiff's tandem walking was abnormal, and that she had a symmetric, unsteady gait. Dr. Gershon also noted that Plaintiff could otherwise walk without an assistive device, could rise from a squatting and sitting position with ease, and had no difficulty getting on and off the examination table. The ALJ did not find these observations persuasive because Plaintiff's treating physician did not "document any problems with instability, which cause standing and walking limitations." It was not unreasonable for the ALJ to weigh Dr. McHenry's examination notes and findings against his medical source statement. *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018). Plaintiff concedes, in fact, that Dr. McHenry's contemporaneous records *do not* document any such limitations. Notwithstanding, she notes that the record demonstrates that she has a "longstanding history of lumbar spine issues."

It is neither the presence nor the history of a medical condition that establishes a disability, but rather its limitations. *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). Moreover, it is notable that Dr. Gershon's report was not entirely favorable. She reported that Plaintiff was "cooperative but did not give good effort during the examination." She also found no objective evidence of physical limitations related to Plaintiff's back and neck pain. She found no indications of permanent sequalae

8

related to her diabetes or hypertension; rather, she found that the uncontrolled nature of both conditions was likely due to medication noncompliance.

In the end, Plaintiff's "argument comes down to the weight the ALJ place[d] on [the expert opinions]—and it is the ALJ's task, not ours, to weigh evidence." *Garcia*, 622 F. App'x at 408–409 *v. Colvin*, 622 F. App'x 405, 408–409 (5th Cir. 2015) (unpublished). The ALJ properly considered the physician opinions of record and credited the limitations he found most supported by the record. That is enough to survive judicial review. The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. Absent evidence that Plaintiff's impairments impact her ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity assessment, the undersigned finds no basis for reversal or remand.

## 2.

In her second assignment of error, Plaintiff alleges the ALJ failed to fully consider her subjective complaints and self-described limitations. However, the Court does not so read the ALJ's decision. "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). Given the evidence of record, the ALJ's credibility assessment is substantially supported and entitled to considerable deference here.

When assessing disability, the ALJ is required to consider all symptoms, including pain, and the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence, together with other

evidence. 20 C.F.R. § 404.1529(a). In evaluating the intensity of symptoms, including pain, the ALJ will consider all available evidence such as the objective medical evidence, the claimant's daily activities, symptoms, factors that precipitate and aggravate those symptoms, medication and side effects, types of treatment, and functional limitations. 20 C.F.R. § 404.1529(c)(3). The ALJ must also consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). But as the relevant Social Security regulations make clear, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a). The Fifth Circuit has long noted that "[w]hile an ALJ must consider an applicant's subjective complaints of pain, he is permitted to examine objective medical evidence in testing the applicant's credibility. He may find, from the medical evidence, that an applicant's complaints of pain are not to be credited or are exaggerated." *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

In assessing Plaintiff's disability claim here, the ALJ considered numerous reports, medical evidence, and Plaintiff's testimony. That he did not follow "formalistic rules" or engage in an exhaustive discussion of every subjective complaint does not require reversal or remand. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (declining to require that ALJ specify the evidence supporting a credibility finding and discuss the evidence that was rejected); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). To the contrary, an ALJ "is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Clary v. Barnhart*, 214 F. App'x 479, 482 (5th Cir. 2007) (citing *Falco*, 27 F.3d at 163 (emphasis in

original)). "[T]here will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here." *Giles v. Astrue*, 433 F. App'x 241, 251 (5th Cir. 2011).

In evaluating Plaintiff's subjective complaints and limitations, the ALJ considered her hearing testimony that her pain level remained unchanged since her injury, with no alleviation from surgery or physical therapy. He also considered her testimony that she cannot lift anything over 10 pounds, stand more than 5 minutes, walk long distances, or attend to her personal hygiene without left arm pain. In so doing, the ALJ found Plaintiff's complaints concerning the intensity, persistence and limiting effects of her impairments were not fully supported by the objective medical evidence, explaining as follows:

> The objective medical evidence and other evidence does not support the claimant's allegations of debilitating symptoms and limitations. She had a work-related accident on April 3, 2017, with a left shoulder injury. She had a scope that she alleges did not help and she alleges pain of 8/10. She brought to the hearing a work release slip returning her to work with ten pounds left upper extremity restrictions. Other than the left shoulder injury, she alleges back and right leg pain, which the undersigned finds little evidence of in the medical evidence of record. She alleges panic/attacks but has not had any treatment other than Klonopin prescribed by her primary care physician. She does have diabetes mellitus and hypertension but there is no documentation of any end organ damage due to these conditions.

The undersigned finds no error warranting reversal or remand in the ALJ's credibility analysis.

While an ALJ cannot ignore altogether a claimant's subjective complaints of pain, "subjective complaints of pain must also be corroborated by objective medical

11

evidence." *Chambliss*, 269 F.3d at 522. Despite her self-described limitations, Plaintiff reported in her administrative filings that she was able to get her grandchildren ready for school every day and perform housework activities like those performed in physical therapy post-surgery. A medical condition that can be reasonably remedied by surgery, treatment, or medication is not disabling. Plaintiff's claims to the contrary were simply not credible. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). While hardly dispositive, a claimant's failure to seek mental health treatment beyond the medication prescribed by her primary care physician is a relevant factor in determining the severity of an alleged impairment. *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Anthony*, 954 F.2d at 295; *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). In the end, the mere fact that working may cause Plaintiff pain or discomfort does not mandate a finding of disability, particularly where substantial evidence indicates that she can work despite being in pain or discomfort, as it does here. *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson*, 767 F.2d at 182.

## Conclusion

Based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision. For these reasons, it is the opinion of the undersigned United States

Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted, that Plaintiff's appeal be dismissed with prejudice, and that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on July 20, 2021.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE
